Dear Representative Buechner:
This is to acknowledge receipt of your request for an opinion from this office which reads as follows:
 "After the decision and the modification, subsequently rendered, by the Supreme Court of Mo. in Labor's Educational and Political
Club — vs Danforth, is it lawful, under § 129.070 or any other applicable statutes, for any corporation organized and doing business under and by virtue of the laws of Missouri to organize and support the political action committees using the definition of political action committee that was set forth in proposition one."
In considering your opinion request, there are certain basic assumptions that will be made. In accordance with Attorney General Opinion Letter No. 73, Proffer, May 3, 1978, the assumption is made that § 129.070, RSMo 1969 is presently the law in effect in the State of Missouri. Your opinion request will be considered from the viewpoint as to whether or not § 129.070, RSMo 1969 prohibits corporations organized and doing business under and by virtue of the laws of Missouri from organizing and supporting political action committees (hereinafter referred to as PACs).
It should be noted that this opinion does not intend in any way to interpret the provisions of federal law.
BASIC POLITICAL ACTION COMMITTEE STRUCTURE
This opinion letter relates to PACs that are voluntary, nonprofit, unincorporated associations, formed under the auspices of companies which are independent of any political party, candidate or organization. The stated purposes of such committees are to promote the effective citizenship of salaried personnel who have policy-making, managerial, professional or supervisory responsibilities. This is to be done by facilitating their financial participation in the elective processes and to assist in the nomination and election of candidates for state offices who will support integrity in government and advance the interest of the free enterprise system.
Membership and participation in such PACs is open to all U.S. citizens who are salaried personnel of the company (with an annual salary in excess of a certain amount) who have policy-making, managerial, professional or supervisory responsibilities.
Contributions to PACs are entirely voluntary and no contributions may be solicited by physical force, job discrimination or financial reprisal (or threat thereof) or as a condition of employment or through a promise of reimbursement by the company. The solicitor must inform the person being solicited of the above facts and rights and of the fact that any contribution guidelines are but suggestions only and that no rewards or sanctions of any nature whatsoever will result from the contribution of more or less than the suggested amount, or no amount at all. Although contributions may be solicited during working hours and on company premises, no contributions may be solicited by a corporate superior of the person being solicited.
For the convenience of the employee, contributions in the amount desired by the employee may be made by deductions from the employee's paycheck by the company on a regular basis for remittance to the PACs. No amount contributed by the employee under this plan may be repaid to the employee by the company. The authorization to deduct contributions from the employee's salary is revocable by the employee at any time.
Contributions to the PACs are deposited in a bank account in the name of the PACs. This account is separate in all respects from any account of the company, and the company may not in any way control or use the funds in this account.
Companies often advance to the PACs funds necessary for their establishment and operation and for the solicitation and collection of contributions to them. However, PACs must reimburse companies from their separate accounts for all amounts advanced to them and all expenses incurred by the companies (including the reasonable rental value of any company facilities which may be used by the PACs), and for salaries and wages paid to employees while engaged in soliciting contributions during working hours, unless such time is "made up" by the employee by working additional hours without further compensation.
The chairman, treasurer and secretary of such PACs, who must be PAC members are elected once each year by majority vote of PAC members and may be removed in like manner at any time.
The executive committee of such PACs consists of the chairman, treasurer and secretary and such other PAC members as may be elected by the members from time to time. The executive committee alone is empowered to set the basic policies with respect to expenditures to be made by the PAC, and to direct disbursements to specific candidates and committees. Companies have no power to set policy or to direct expenditures by PACs or direct any contributions to any candidates or committees.
In the event of the dissolution of such PACs, all property and assets belonging to the PACs (in excess of its debts and expenses on distribution) are to be promptly returned to the contributing individuals on a pro rata basis, determined by the relative contributions of each, or if this proves unfeasible, are to be promptly distributed for the purposes stated in the PAC articles of association.
THE APPLICABLE MISSOURI STATUTE
In connection with the above, Section 129.070, RSMo 1969, reads in part as follows:
 "It shall not be lawful for any corporation organized and doing business under and by virtue of the laws of this state to, directly or indirectly, by or through any of its officers or agents, or by or through any person or persons for them, influence or attempt to influence the result of any election to be held in this state or procure or endeavor to procure the election of any person to a public office by the use of money belonging to such corporation, or by subscribing any money to any campaign fund of any party or person, or by discharging or threatening to discharge any employee of such corporation for reason of the political opinions of such employee, or to use or offer to use any power, effort, influence or other means whatsoever, to induce or persuade any employee or other person entitled to register before or vote at any election, to vote or refrain from voting for any candidate or on any question to be determined or at issue in any election. . . ."
ANALYSIS
Under the above statute, the methods of influencing elections prohibited by the statute are as follows:
 (1) The "use of money" belonging to the corporation;
 (2) Subscribing corporate money to the campaign fund of any person or persons;
 (3) Discharging or threatening to discharge any employee for reason of his or her political opinions; and
 (4) To use or offer to use any power, effort, influence or other means whatsoever to induce or persuade any employee to vote or refrain from voting for any candidate or on any question to be determined or at issue in the election.
In this regard, there is authority for the proposition that the Missouri Corrupt Practices Act, of which § 129.070, RSMo,supra, is a part, is penal in nature and should be strictly construed. See State ex rel. Wright v. Carter, 319 S.W.2d 596,598 (Mo.Banc 1959). In this decision, the Supreme Court of Missouri stated at page 598:
 ". . . When we say a statute should be strictly construed we generally mean that it can be given no broader application than is warranted by its plain and unambiguous terms. . . ."
Therefore, under the plain and unambiguous terms of § 129.070, RSMo 1969, the issue for consideration is whether or not the establishment and operation of the PACs as herein described is prohibited by the statute.
It should be noted that there have been no appellate court decisions in this state that have considered the above issue. However, a similar provision of federal law has been interpreted by the United States Supreme Court in the case of Pipefitters'Local Union No. 562, et al. v. United States, 407 U.S. 385,92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).
In the Pipefitters case, the United States Supreme Court suggested the appropriate attributes of a legitimate political fund and stated at 407 U.S. 414 as follows:
 "We think that neither side fully and accurately portrays the attributes of legitimate political funds. We hold that such a fund must be separate from the sponsoring union only in the sense that there must be a strict segregation of its monies from union dues and assessments. We hold, too, that, although solicitation by union officials is permissible, such solicitation must be conducted under circumstances plainly indicating that donations are for a political purpose and that those solicited may decline to contribute without loss of job, union membership, or any other reprisal within the union's institutional power. Thus, we agree with the second half of the Government's position, but reject the first.
 "As Senator Taft's remarks quoted above indicate, supra, at 406-408, the test of voluntariness under § 610 focuses on whether the contributions solicited for political use are knowing free-choice donations. The dominant concern in requiring that contributions be voluntary was, after all, to protect the dissenting stockholder or union member. Whether the solicitation scheme is designed to inform the individual solicited of the political nature of the fund and his freedom to refuse support is, therefore, determinative.
 "Nowhere, however, has Congress required that the political organization be formally or functionally independent of union control or that union officials be barred from soliciting contributions or even precluded from determining how the monies raised will be spent. The Government's argument to the contrary in the first half of its position is based on a misunderstanding of the purposes of § 610. When Congress prohibited labor organizations from making contributions or expenditures in connection with federal elections, it was, of course, concerned not only to protect minority interests within the union but to eliminate the effect of aggregated wealth on federal elections. But the aggregated wealth it plainly had in mind was the general union treasury — not the funds donated by union members of their own free and knowing choice. . . ."
As a result of the Pipefitters' decision, it would appear that a corporation without violating the Corrupt Practices Act could organize a fund for political purposes and solicit employee contributions provided that the contributions were voluntarily contributed without violating the Corrupt Practices Act.
It is our opinion that the reasoning of the Pipefitters'
decision is persuasive and that it would, therefore, not be a violation of § 129.070, RSMo 1969, for any corporation organized and doing business under and by virtue of the laws of Missouri to organize and support political action committees as defined above.
It is our understanding that the employees being solicited must be informed by the solicitor of the political purpose of the PAC and of their right not to contribute. Also, there are no rewards or reprisals which result as a consequence of any employee's decision to contribute or not to contribute to the PAC. It appears that such PACs involve no threat of discharge for reasons of the political opinions of the employee. It is our understanding that the money contributed to candidates or committees by PACs would come solely from voluntary contributions of members, and not from the corporations. Therefore, the operation of such PACs does not involve the subscription of any corporate money to any campaign fund of any party or person in violation of the terms of the statute.
While it is our understanding that corporations may make advances to PACs for the purpose of meeting PAC expenses of establishment, operation, and solicitation in collection of contributions, the corporations must be reimbursed for all such advances from the separate account of the PACs (i.e. from the voluntary contributions of members). Furthermore, interest must be paid to corporations if such reimbursement is delayed longer than thirty days. Also, corporations must be reimbursed by the PACs for the use of facilities and for time spent by employees engaged in solicitation on company time. Therefore, it would appear that no corporate money would be consumed in the operation of the PAC, and that all PAC expenses are ultimately paid from the voluntary contributions of members. As a result, the provisions of § 129.070, RSMo 1969, would not be violated.
The establishment and operation of PACs, as herein described, appear to be the mere creation of a vehicle through which individuals may contribute funds to political candidates or committees. The recipients of PAC contributions are chosen by the members of the executive committees of the PACs, who are elected by the members of the PACs themselves. As a result, the corporations have no power to determine which candidates or committees will receive the monies contributed by PAC members.
In summary, the establishment and operation of PACs, as herein described, by a corporation organized and doing business under and by virtue of the laws of Missouri does not violate the provisions of § 129.070, RSMo 1969.
It is the opinion of this office that it would be lawful under the provisions of § 129.070, RSMo 1969, for a corporation organized and doing business under and by virtue of the laws of Missouri to organize and support political action committees as herein described.
Yours very truly,
 JOHN ASHCROFT Attorney General
Enclosure: Op. Ltr. No. 73, 5/3/78, Proffer